**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

THE COMMONWEALTH
OF MASSACHUSETTS
By Attorney General Maura Healey

THE COMMONWEALTH OF PENNSYLVANIA
By First Deputy Attorney General
Bruce L. Castor, Jr.

THE COMMONWEALTH OF VIRGINIA
By Attorney General Mark R. Herring

STATE OF DELAWARE
By Attorney General Matthew P. Denn

STATE OF MARYLAND                                         Civil Case No._____
By Attorney General Brian E. Frosh

THE STATE OF WEST VIRGINIA
By Attorney General Patrick Morrisey,

       Plaintiffs,

vs.

KONINKLIJKE AHOLD N.V.;
DELHAIZE GROUP NV/SA,

       Defendants.

## COMPLAINT

The States of Delaware, Maryland and West Virginia and the Commonwealths of Virginia, Massachusetts and Pennsylvania, by and through their Attorneys General or Offices of Attorneys General, (collectively the "Plaintiff States") for their complaint herein allege:

### I. NATURE OF THE COMPLAINT

1. Plaintiff States bring this civil antitrust action to challenge the merger of Defendants Koninklijke Ahold N.V. ("Ahold") and Delhaize Group NV/SA ("Delhaize"),

both of whom own and operate supermarket chains located in the Plaintiff States. Plaintiff States allege that the proposed merger of Ahold and Delhaize would substantially lessen competition in numerous markets in violation of Section 7 of the Clayton Act, 15 U.S.C § 18 and in violation of Plaintiff States' applicable state laws.

2. Plaintiff States seek permanent injunctive relief to prevent, restrain, and/or remedy the adverse effects on competition and consequent harm to the public interest that would result from the merger of Ahold and Delhaize.

## II. PARTIES, JURISDICTION, AND VENUE

3. Each Plaintiff State is a sovereign state of the United States. This action is filed on behalf of the Plaintiff States by their respective Attorneys General or Offices of Attorneys General, each of whom is accorded the requisite authority under Section 16 of the Clayton Act, 15 U.S.C. § 26. This authority is buttressed by equitable and common law power vested in the Attorneys General or Offices of Attorneys General and other powers conferred by state law.

4. Defendant Ahold is a corporation organized, existing, and doing business under and by virtue of the laws of the Netherlands, with its office and principal place of business located at Provincialeweg 11, 1506 MA Zaandam, the Netherlands. Koninklijke Ahold N.V.'s principal U.S. subsidiary, Ahold U.S.A., Inc., is a corporation organized, existing, and doing business under and by virtue of the laws of the State of Maryland, with its offices and principal place of business located at 1385 Hancock Street, Quincy, Massachusetts 02169. Ahold owns and operates a number of supermarket chains in ten (10) states in the United States, including supermarkets operating under the Giant, Martin's, and Stop & Shop banners.

5. Ahold is, and at all relevant times has been, engaged in "commerce" as defined

in Section 1 of the Clayton Act, 15 U.S.C. § 12.

6.  Defendant Delhaize is a corporation organized, existing, and doing business under and by virtue of the laws of Belgium, with its office and principal place of business located at Square Marie Curie 40, 1070 Brussels, Belgium, and its registered office at Ossenghemstraat 53, 1080, Brussels, Belgium.  Delhaize Group NV/SA's principal U.S. subsidiary, Delhaize America, LLC., is a limited liability company organized, existing, and doing business under and by virtue of the laws of the State of North Carolina, with its offices and principal place of business at 2110 Executive Drive, Salisbury, North Carolina  28147. Delhaize owns and operates a number of supermarket chains in 17 states in the United States, including supermarkets operating under the Food Lion and Hannaford banners.

7.  Delhaize is, and at all relevant times has been, engaged in "commerce" as defined in Section 1 of the Clayton Act, 15 U.S.C. § 12.

## III. THE MERGER

8.  Pursuant to an Agreement and Plan of Merger dated as of June 24, 2015, Ahold and Delhaize intend to combine their businesses through a merger of equals that will result in a combined entity valued at approximately $28 billion ("the Merger").

## IV. THE RELEVANT PRODUCT MARKET

9.  The relevant line of commerce in which to analyze the Merger is the retail sale of food and other grocery products in supermarkets.

10.  For purposes of this Complaint, the term "supermarket" means any full-line retail grocery store that enables customers to purchase substantially all of their weekly food and grocery shopping requirements in a single shopping visit with substantial offerings in each of the following product categories: bread and baked goods; dairy products; refrigerated food and beverage products; frozen food and beverage products; fresh and prepared meats and

poultry; fresh fruits and vegetables; shelf-stable food and beverage products, including canned, jarred, bottled, boxed, and other types of packaged products; staple foodstuffs, which may include salt, sugar, flour, sauces, spices, coffee, tea, and other staples; other grocery products, including nonfood items such as soaps, detergents, paper goods, other household products, and health and beauty aids; pharmaceutical products and pharmacy services (where provided); and, to the extent permitted by law, wine, beer, and/or distilled spirits.

11. Supermarkets provide a distinct set of products and services and offer consumers convenient one-stop shopping for food and grocery products. Supermarkets typically carry more than 10,000 different items, typically referred to as stock-keeping units (SKUs), as well as a deep inventory of those items. In order to accommodate the large number of food and non-food products necessary for one-stop shopping, supermarkets are large stores that typically have at least 10,000 square feet of selling space.

12. Supermarkets compete primarily with other supermarkets that provide one-stop shopping opportunities for food and grocery products. Supermarkets base their food and grocery prices primarily on the prices of food and grocery products sold at other nearby competing supermarkets. Supermarkets do not regularly conduct price checks of food and grocery products sold at other types of retail stores—including convenience stores, specialty food stores, limited assortment stores, hard-discounters, and club stores—and do not typically set or change their food or grocery prices in response to prices at these types of stores.

13. Although retail stores other than supermarkets may also sell food and grocery products, these types of stores do not, individually or collectively, provide sufficient competition to effectively constrain prices at supermarkets. These retail stores do not offer a supermarket's distinct set of products and services that provides consumers with the convenience of one-stop shopping for food and grocery products. The vast majority of

consumers shopping for food and grocery products at supermarkets are not likely to start shopping at other types of stores, or significantly increase grocery purchases at other types of stores, in response to a small but significant nontransitory price increase by supermarkets.

## V. THE RELEVANT GEOGRAPHIC MARKETS

14. Customers shopping at supermarkets are motivated by convenience and, as a result, competition for supermarkets is local in nature. Generally, the overwhelming majority of consumers' grocery shopping occurs at stores located very close to where they live.

15. Respondents currently operate supermarkets under the Giant, Martin's, Stop & Shop, Food Lion, and Hannaford banners within approximately one-tenth of a mile to ten miles of each other in each of the relevant geographic markets, though the majority of overlapping banners raising concerns are within six miles or less of each other. The primary trade areas of Respondents' banners in each of the relevant geographic markets overlap significantly.

16. The 41 geographic markets in which to assess the competitive effects of the Merger are localized areas in (1) Lewes & Rehoboth Beach, Delaware; (2) Millsboro, Delaware; (3) Millville, Delaware; (4) Accokeek, Maryland; (5) Bowie, Maryland; (6) California, Maryland; (7) Columbia, Maryland; (8) Cumberland & Frostburg, Maryland; (9) Easton, Maryland; (10) Edgewater, Maryland; (11) Gaithersburg, Maryland; (12) Hagerstown (north), Maryland; (13) Hagerstown (south), Maryland; (14) La Plata, Maryland; (15) Lusby, Maryland; (16) Owings Mills, Maryland; (17) Prince Frederick, Maryland; (18) Reisterstown, Maryland; (19) Salisbury, Maryland; (20) Sykesville, Maryland; (21) Upper Marlboro, Maryland; (22) Gardner, Massachusetts; (23) Kingston, Massachusetts; (24) Mansfield & South Easton, Massachusetts; (25) Milford, Massachusetts; (26) Norwell, Massachusetts; (27) Norwood & Walpole, Massachusetts; (28) Quincy, Massachusetts; (29) Saugus,

Massachusetts; (30) Chambersburg, Pennsylvania; (31) Waynesboro, Pennsylvania; (32) York, Pennsylvania; (33) Culpeper, Virginia; (34) Fredericksburg, Virginia; (35) Front Royal, Virginia; (36) Purcellville, Virginia; (37) Richmond, Virginia; (38) Stafford, Virginia; (39) Stephens City, Virginia; (40) Winchester, Virginia; and (41) Martinsburg, West Virginia.  A hypothetical monopolist controlling all supermarkets in any one of these areas could profitably raise prices by a small but significant nontransitory amount in that area.

## VI.  MARKET CONCENTRATION

17.     Under the 2010 Department of Justice and Federal Trade Commission Horizontal Merger Guidelines ("Merger Guidelines") and relevant case law, the Merger is presumptively unlawful in the markets for the retail sale of food and other grocery products in supermarkets in all but one of the 41 geographic markets listed in Paragraph 16.  Under the Merger Guidelines' standard measure of market concentration, the Herfindahl-Hirschman Index ("HHI"), a merger is presumed to create or enhance market power or facilitate its exercise if it increases the HHI by more than 200 points and results in a post-merger HHI that exceeds 2,500 points.  The Merger would result in market concentration levels in excess of these thresholds in all but one of these 41 geographic markets.

18.     Post-merger HHI levels in the relevant geographic markets would range from 2,268 to 10,000, and the Merger would result in HHI increases ranging from 243 to 4892. Exhibit A presents market concentration levels for each of the relevant geographic markets.

19.     As seen in Exhibit A, the Merger would reduce the number of meaningful supermarket competitors from two to one in two relevant geographic markets, three to two in 12 relevant geographic markets, four to three in 17 relevant geographic markets, five to four in nine relevant geographic markets, and seven to six in one relevant geographic market.

## VII. ENTRY CONDITIONS

20.     Entry into the relevant markets would not be timely, likely, or sufficient in magnitude to prevent or deter the likely anticompetitive effects of the Merger.  Significant entry barriers include the time and costs associated with conducting necessary market research, selecting an appropriate location for a supermarket, obtaining necessary permits and approvals, constructing a new supermarket or converting an existing structure to a supermarket, and generating sufficient sales to have a meaningful impact on the market.

## VIII. EFFECTS OF THE MERGER

21.     The Merger, if consummated, is likely to substantially lessen competition for the retail sale of food and other grocery products in supermarkets in the relevant geographic markets identified in Paragraph 16 in the following ways, among others:

   a. by eliminating direct and substantial competition between Respondents Ahold and Delhaize;

   b. by increasing the likelihood that Ahold will unilaterally exercise market power; and

   c. by increasing the likelihood of, or facilitating, coordinated interaction between the remaining participants.

22.     The ultimate effect of the Merger would be to increase the likelihood that the prices of food or groceries will increase, and that the quality and selection of food, groceries, or services will decrease, in the relevant geographic markets.

## IX. VIOLATIONS ALLEGED

### First Cause of Action

23.     Plaintiff States repeat and reallege every preceding allegation as if fully set forth herein.

24.     The agreement described in Paragraph 8 constitutes a violation of Section 7 of

the Clayton Act, as amended, 15 U.S.C. § 18.

## Second Cause of Action

25. Plaintiff States repeat and reallege every preceding allegation as if fully set forth herein.

26. The Merger, if consummated, would violate or threaten to violate the prohibitions contained in the following state statutes:

 a. Massachusetts: The Massachusetts Consumer Protection Act, Mass. Gen, Laws c. 93A, § 2;

 b. Pennsylvania: The Commonwealth of Pennsylvania asserts a claim under Pennsylvania common law doctrine against unreasonable restraint of trade. The Commonwealth of Pennsylvania, by and through its Office of Attorney General, can bring an antitrust suit as parens patriae on behalf of natural persons. See Commonwealth Attorneys Act, 71 P.S. § 732-204 (c);

 c. Virginia: The Virginia Antitrust Act, Virginia Code § 59.1-9.1 to 9.17;

 d. Delaware: The Delaware Antitrust Act, 6 Del. C. § 2101 *et seq.*;

 e. Maryland: Maryland Antitrust Act, Md. Code Ann., Com. Law § 11-201. *et seq.*; and

 f. West Virginia: West Virginia Antitrust Act, W.Va. Code §§ 47-18-1 *et seq.*

## X. REQUESTED RELIEF

Accordingly, the Plaintiff States request this Court:

(A) Adjudicate that the merger of Ahold and Delhaize violates Section 7 of the Clayton Act, 15 U.S.C. § 18, and the laws of the Plaintiff States as alleged above;

(B) Preliminarily and permanently enjoin Ahold and Delhaize from carrying out the

Merger, or from combining their assets and operations in any other manner;

(C)     Award Plaintiff States their reasonable costs and attorneys' fees; and

(D)     Award such other further relief as the Court may deem just and proper.

Respectfully submitted,

COMMONWEALTH OF MASSACHUSETTS
MAURA HEALEY
ATTORNEY GENERAL

_/s/ Michael B. Mackenzie_
MICHAEL B. MACKENZIE
Assistant Attorney General
WILLIAM T. MATLACK
Chief, Antitrust Division
Office of the Attorney General of Massachusetts
One Ashburton Place, 18th Floor
Boston, MA 02108
617-963-2369
michael.mackenzie@state.ma.us

**ATTORNEYS FOR THE COMMONWEALTH OF MASSACHUSETTS**

OFFICE OF ATTORNEY GENERAL
COMMONWEALTH OF PENNSYLVANIA
FIRST DEPUTY ATTORNEY GENERAL
BRUCE L. CASTOR, Jr.

Tracy Wertz
Chief Deputy Attorney General


_____
By: JENNIFER KIRK
Senior Deputy Attorney General
Antitrust Section
14th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 787-4530
jkirk@attorneygeneral.gov

ATTORNEYS FOR THE COMMONWEALTH OF PENNSYLVANIA

**COMMONWEALTH OF VIRGINIA**
MARK R. HERRING
Attorney General of Virginia

CYNTHIA E. HUDSON
Chief Deputy Attorney General

RHODES B. RITENOUR
Deputy Attorney General
Civil Litigation Division

RICHARD S. SCHWEIKER, JR.
Senior Assistant Attorney General and Chief
Consumer Protection Section

By: /s/ Sarah Oxenham Allen
SARAH OXENHAM ALLEN
Senior Assistant Attorney General and Unit Manager
Antitrust Unit, Consumer Protection Section
Office of the Attorney General
202 North 9th Street
Richmond, VA 23219
Tel: (804) 786-6557
SOAllen@oag.state.va.us

TYLER T. HENRY
Assistant Attorney General
Antitrust Unit, Consumer Protection Section
Office of the Attorney General
202 North 9th Street
Richmond, VA 23219
Tel: (804) 692-0485
THenry@oag.state.va.us

ATTORNEYS FOR THE COMMONWEALTH OF VIRGINIA

**STATE OF DELAWARE**
MATTHEW P. DENN
Attorney General of Delaware

By: *[signature]*
MICHAEL A. UNDORF
Deputy Attorney General
Delaware Department of Justice
820 N. French St., 5th Floor
Wilmington, DE 19801
Tel: (302) 577-8924
Michael.Undorf@state.de.us

**ATTORNEYS FOR THE STATE OF DELAWARE**

**STATE OF MARYLAND**
BRIAN E. FROSH
ATTORNEY GENERAL

*/s/ Ellen S. Cooper*

ELLEN S. COOPER
Chief, Antitrust Division
JOHN R. TENNIS
Deputy Chief, Antitrust Division
200 St. Paul Place, 19th Floor
Baltimore, MD  21202-2021
(410) 576-6470
jtennis@oag.state.md.us

**ATTORNEYS FOR THE STATE OF MARYLAND**

**STATE OF WEST VIRGINIA**
PATRICK MORRISEY
Attorney General of West Virginia

ANN L. HAIGHT
Deputy Attorney General
Director, Consumer Protection and Antitrust Division

_____
TANYA L. GODFREY
West Virginia State Bar No. 7448
District of Columbia Bar No. 1016435
Assistant Attorney General
Consumer Protection Division
Office of the West Virginia Attorney General
269 Aikens Center
Martinsburg, WV  25404
 (304) 267-0239
 (304) 267-0248 (Facsimile)
Tanya.L.Godfrey@wvago.gov

**ATTORNEYS FOR THE STATE OF WEST VIRGINIA**